IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MARIE TAYLOR, on behalf of herself and all others similarly situated, | |
| Plaintiff, | CIVIL ACTION NO.: 4:24-cv-149 |
| v. | |
| FPL FOOD LLC, | |
| Defendant. | |

**O R D E R**

This matter is before the Court on Defendant FPL Food LLC's Motion to Compel Arbitration. (Doc. 16.) According to the Complaint, FPL Food LLC ("FPL") mishandled Plaintiff's personally identifiable information ("PII"), resulting in a data breach. (Doc. 1.) Plaintiff filed this putative class action suit against Defendant seeking, among other things, class certification and damages. (Id. at pp. 42–47.) Defendant then filed the at-issue Motion to Compel Arbitration. (Doc. 16.) The Motion has been fully briefed. (Docs. 16-1, 20 & 21.) For the reasons below, the Court **GRANTS** Defendant's Motion to Compel Arbitration. (Doc. 16.)

BACKGROUND

**I.     Factual Background**

The following facts are alleged in the Complaint. (Doc. 1.) Defendant FPL is a producer of fresh beef with its principal place of business in Augusta, Georgia. (Id. at pp. 2, 7.) Plaintiff is a former employee of Defendant. (Id. at p. 22.) The PII that Defendant obtained from current and former employees included their names, addresses, Social Security numbers, employee benefits information, and other sensitive information. (Id. at p. 1.) Plaintiff and the putative class members

were among those whose PII Defendant obtained. (Id. at p. 3.) While collecting the PII, Defendant agreed to safeguard and protect such PII and keep such PII secure and confidential. (Id.)

On the day Plaintiff started her employment with Defendant, she and Defendant entered an Agreement to Arbitrate ("Arbitration Agreement"), which consisted of the following language:

> Agreement to Arbitrate: Except as specifically set forth herein, I, [Marie Taylor–(handwritten)] ("Employee"), agree to resolve any and all disputes or claims related in any manner whatsoever to my employment at FPL Food ("Company") including, but not limited to, any claims against Company, its officers, shareholders, employees, or agents, by binding arbitration. Disputes or claims related to my employment include, but are not limited to, claims or charges based upon federal or state statutes, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, and any other civil rights statute, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Fair Labor Standards Act or other wage statutes, the WARN Act, claims based upon tort or contract laws, or any other federal or state law affecting employment in any manner whatsoever.
>
> Claims Not Covered by This Agreement: The sole exception to this agreement to arbitrate involves suits brought on behalf of Employer or Employee seeking a temporary restraining order, preliminary injunction and/or permanent injunction ("Injunctive relief") based upon violation of non-compete, and/or confidentiality, and/or non-disclosure, and/or solicitation agreements, in the event there is Immediate and irreparable injury, loss or damage. The parties agree that neither shall seek monetary damages under this exception to the agreement to arbitrate. However, in the event that Employer is successful in obtaining injunctive relief as defined herein, Employee shall be liable for payment of Employer's attorneys' fees, costs, and expenses incurred in connection with obtaining injunctive relief.
>
> No Joinder of Parties: Employee understands that class and collective actions are not permitted under this Agreement and covenants that Employee will not pursue any class or collective actions or serve as class representative against Company but rather will pursue all claims individually via arbitration as outlined herein.
>
> Arbitration Procedures: Company and Employee agree that arbitration pursuant to this Agreement shall be in accordance with the applicable rules of the American Arbitration Association ("AAA") or the National Arbitration Forum ("NAF"). The parties, however, specifically agree that the AAA or NAF class action rules are

excluded from this Agreement in that class actions or collective actions are not permitted under this Agreement.

Associated Fees and Costs:  The parties agree that the parties shall share equally the costs, fees, and expenses incurred by arbitration, except in the following circumstances:

> In the event the Employee is unable to pay his or her share of the costs of arbitration due to financial hardship, the Employee may apply to the arbitrator for "*in forma pauperis*" status in accordance with the criteria established by the applicable United States Circuit Court of Appeals.  Alternatively, the Employee may apply the arbitrator for the use of a *pro bono* arbitrator or for waiver, reduction or deferral of the arbitrator's fees based upon financial hardship.  The arbitrator shall determine whether the employee qualifies for financial hardship or waiver, reduction or deferral of the arbitrator's fees and costs.

Recovery of Attorneys' Fees or Costs:  In the event that a claim is brought pursuant to any law or statute that provides for the allocation of attorneys' fees or costs, the arbitrator shall have the power to allocate attorneys' fees and costs pursuant to the applicable law or statutes.

Applicable Rules:  Company and Employee agree that, in addition to the applicable AAA or NAF rules, the arbitration proceedings shall be conducted in accordance with the appropriate federal or state rules of evidence, civil procedure, and appellate procedure.  In cases premised on federal jurisdiction, the Federal Rules of Evidence, Federal Rules of Civil Procedure and Federal Rules of Appellate Procedure shall apply.  In cases premised on state jurisdiction, the applicable state rules of evidence, civil procedure, and appellate procedure shall apply.  In cases of concurrent jurisdiction, the federal rules shall apply.  To the extent the aforementioned federal and state rules conflict with the AAA or NAF rules, the federal and state rules shall govern the proceedings.  Procedures addressed in the Fair Labor Standards Act shall govern in a collective action in the event that the arbitrator allows collective or representative actions in violation of the terms of this agreement.

Written Decision by Arbitrator:  The arbitrator shall write an opinion stating all findings of fact and conclusions of law with respect to the arbitration decision.

Judgment:   An award opinion, ruling, or judgment (hereinafter collectively "Judgment") of the arbitrator shall be entered as a judgment of record in the

appropriate court. Specifically, in cases premised on federal jurisdiction the Judgment shall be entered in the appropriate U.S. District Court and in cases premised solely on state law, the Judgment shall be entered in the appropriate state court.

Appeal of Arbitration Decision: Company and Employee agree that the arbitrator's Judgment shall be appealable on the same grounds as a judgment rendered by a fact-finding court of law ("trial court"). The parties agree that the arbitrator's decision will be reviewed under the same standard of review used in reviewing a trial court's decision and will be governed by the applicable rules of appellate procedure referenced hereinabove.

Governing Law: The parties agree that the Company is engaged in transactions involving interstate commerce. Company and Employee expressly agree that the Federal Arbitration Act governs the enforceability of any and all of the arbitration provisions of this Agreement.

Severability: If any part, term or provision of this Binding Arbitration Agreement is held to be illegal, invalid, void, or unenforceable, or to be in conflict with any law, the validity of the remaining provisions or portions of this Agreement shall not be affected, and the rights of the parties shall be construed and enforced as if this Agreement did not contain the particular part, term, or provision held invalid.

The invalidity or unenforceability of any provision of this Binding Arbitration Agreement shall not affect the validity or enforceability of any other agreement entered into by the parties, including any non-competition agreement or non-solicitation agreement.

Not an Employment Agreement: Employee understands and agrees that this Binding Arbitration Agreement is not intended to be an employment contract and that nothing herein shall be construed as altering Employee's at-will employment with Company.

Consideration: Employee agrees to follow all of the rules and policies outlined herein in consideration for his or her employment with Company. Employee executes this Binding Arbitration Agreement in consideration for employment and/or for continued employment.

EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES CAREFULLY READING THIS AGREEMENT, UNDERSTANDING ITS TERMS, AND ENTERING INTO THIS AGREEMENT VOLUNTARILY AND NOT IN

RELIANCE ON ANY PROMISES OR REPRESENTATIONS OTHER THAN THOSE CONTAINED IN THE AGREEMENT ITSELF.

(Doc. 16-2.)

On June 6, 2024, Defendant learned of a data breach during which an unknown actor accessed Plaintiff's PII. (Doc. 1, p. 3.) On April 24, 2024, Defendant sent Plaintiff and class members a notice informing them of this breach. (Id. at p. 9.) The letter noted, "[o]ur investigation revealed that some documents accessed may have contained information including your name, address, Social Security number, and employee benefits information." (Id.)

## II.     Procedural History

Plaintiff sued Defendant in this Court on July 17, 2024. (Doc. 1.) Plaintiff alleges in the Complaint that, because of the data breach, Plaintiff and class members have suffered injuries including: "(i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iv) the disclosure of their private information, and (v) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII." (Id. at pp. 5–6.) Plaintiff contends that "Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights." (Id. at p. 21.) Plaintiff seeks to represent the class of "[a]ll individuals whose PII was accessed and/or acquired in the data incident that is the subject of the Notice of Data Breach that Defendant sent to Plaintiff and Class

Members on or around July 3, 2024 . . . ." (Id. at pp. 23–24.) On behalf of this prospective class, Plaintiff asserts these claims against Defendant: negligence (Count I); breach of implied contract (Count II); and declaratory judgment (Count III). (Id. at pp. 31–42.)

On September 12, 2024, Defendant filed its Motion to Compel Arbitration. (Doc. 16.) Plaintiff filed a Response in Opposition to the Motion, (doc. 20), and Defendant filed a Reply to the Response, (doc. 21).

**DISCUSSION**

In its Motion to Compel Arbitration, Defendant argues that Plaintiff's "claims belong in arbitration" because Plaintiff "agreed, in writing, to arbitrate 'any and all disputes or claims' she has against FPL . . . ." (Doc. 16-1, p. 1.) Defendant also contends that "the Court should not decide any arbitrability challenges that Taylor raises because the Arbitration Agreement delegates arbitrability questions, like scope or enforceability, to the arbitrator by incorporating the rules of the American Arbitration Association ('AAA') and the National Arbitration Forum ('NAF')." (Id. at p. 1–2.) Plaintiff, on the other hand, argues that "the arbitration agreement is substantively unconscionable and unenforceable because it includes a class action waiver" and, therefore, "Plaintiff's claims must proceed in this Court." (Doc. 20, pp. 1, 2.) Plaintiff also argues that "[t]his issue [of unconscionability] cannot be delegated to an arbitrator because the arbitration agreement[] require[s] a court, not an arbitrator, to determine whether the class action waiver is enforceable." (Id. at p. 2.)

The Arbitration Agreement here provides that it is governed by the Federal Arbitration Act ("FAA"). (Doc. 16-2, p. 5.) The FAA "embodies a liberal federal policy favoring arbitration agreements." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and internal quotation marks omitted). Accordingly, "the [FAA] requires courts

rigorously to enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." Epic Sys. Corp. v. Lewis, 584 U.S. 497, 506 (2018) (internal quotations and emphasis omitted). On a motion to compel arbitration, a court undertakes a two-step inquiry to determine (1) "whether the parties[] agree[d] to arbitrate" the dispute in question and, if they did, (2) "whether legal constraints external" to their agreement foreclose arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). The first step requires courts to determine whether a given dispute falls within the scope of a valid arbitration agreement. Id. at 626–28. In making this determination, the FAA instructs that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 626 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983)). If a court finds the parties agreed to arbitrate the dispute, then, under the second step, the party opposing arbitration must show that external legal constraints nonetheless make the claims unsuitable for arbitration. Id. at 628; see also Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.").

The FAA provides that an arbitration clause for a "contract evidencing a transaction involving commerce" is enforceable unless "such grounds . . . exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. In other words, an arbitration agreement is "on an equal footing with other contracts" and is enforceable unless a "generally applicable" principle of contract law indicates otherwise. Pendergast v. Sprint Nextel Corp., 691 F.3d 1224, 1231 (11th Cir. 2012) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)); see also Caley, 428 F.3d at 1371. Courts look to the applicable state law governing contracts to determine

whether an arbitration agreement is enforceable. See Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting Caley, 428 F.3d at 1368). Accordingly, the Court must determine whether the Arbitration Agreement is an enforceable contract under Georgia law and, if so, whether Plaintiff's claims fall within its scope.[1]

If, after both steps, a court finds the arbitration agreement is enforceable, the traditional rule was that the court could compel arbitration and either stay or dismiss the suit. See Lambert v. Austin Indus., 544 F.3d 1192, 1195 (11th Cir. 2008). However, the Supreme Court recently held that the FAA always requires courts to stay, rather than dismiss, the proceedings if one of the parties requests a stay. Smith v. Spizzirri, 601 U.S. 472, 478 (2024); 9 U.S.C. § 3 (providing that courts "shall" upon request stay the proceeding until the arbitration "has been had in accordance with the terms of the [arbitration] agreement").

Here, at step one of the Court's analysis, Plaintiff does not dispute that the parties agreed to arbitrate her data-breach claims. (Doc. 20, pp. 2–13.) Rather, Plaintiff contends that Defendant's Motion to Compel fails at the second step—arguing that the Court cannot enforce the Arbitration Agreement because it is unconscionable under Georgia law due to its inclusion of a class action waiver. (Id.) The Court must first determine whether it has the authority to consider the conscionability (or unconscionability) of the Arbitration Agreement. Plaintiff asserts that "[t]he arbitration agreement provides that a court, not an arbitrator, must determine whether the

---

[1] The Arbitration Agreement does not contain a choice-of-law provision for claims litigated outside of an arbitral forum. In their briefing, both parties rely on Georgia law. (See doc. 16-1, p. 5; see generally doc. 20.) The Court finds that the application of Georgia law is appropriate as the Agreement was signed in and intended to be performed in Georgia. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 59 (1995) ("[I]f a [] contract, without a choice-of-law provision, had been signed in New York and was to be performed in New York, presumably the laws of the State of New York would apply, even though the contract did not expressly so state.") (internal quotation marks omitted).

class action waiver is enforceable because the agreement specifically excludes class action rules" under the AAA and the NAF. (Id. at pp. 3–5.) Plaintiff contends that, "[h]ad the arbitration agreement not specifically excluded the AAA and NAF class action rules, it may have been possible for an arbitrator to determine whether the class action waiver is enforceable," apparently because one of those rules provides that, at the outset of an arbitration, the arbitrator "shall determine" whether the arbitration agreement permits class arbitration. (Id. at p. 4.) Plaintiff's argument, thus, is that without such a rule, the arbitrator shall not make such a determination.

Generally speaking, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). However, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 68 (2019). "[The Supreme Court] has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." Id. at 69.

Here, the Arbitration Agreement provides that "Company and Employee agree that arbitration pursuant to this Agreement shall be in accordance with the applicable rules of the [AAA] or the [NAF]. The parties, however, specifically agree that the AAA or NAF *class action* rules are excluded from this Agreement in that class actions or collective actions are not permitted under this Agreement." (Doc. 16-2, p. 4 (emphasis added).) The Arbitration Agreement has no other express delegation clauses. (Id. at pp. 4–5.) Under Rule 7(a) of the AAA rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any

9

claim or counterclaim." Am. Arb. Ass'n, Com. Rules, available at http://adr.org/sites/default/files/Commercial%20Rules.pdf (accessed May 19, 2025). The United States Court of Appeals for the Eleventh Circuit has held that, "where the parties expressly incorporate the AAA rules into an arbitration provision, 'this alone serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator.'" WasteCare Corp. v. Harmony Enters., Inc., 822 F. App'x 892, 895–96 (11th Cir. 2020) (per curiam) (quoting JPay, Inc. v. Kobel, 904 F.3d 923, 936 (11th Cir. 2018)). Accordingly, based on the incorporation of the AAA rules into the Arbitration Agreement, Plaintiff and FPL clearly and unmistakably agreed to broadly delegate questions of arbitrability to an arbitrator. The parties' exclusion of the AAA and NAF rules governing class arbitrations does not negate the parties' delegation of the authority to decide *arbitrability*—including, specifically, the validity of the Arbitration Agreement in light of the inclusion of a provision that one party claims is unconscionable—to an arbitrator.

Plaintiff's data-breach claims are subject to the parties' agreement to arbitrate. An arbitrator must determine whether the Arbitration Agreement is enforceable despite the inclusion of what Plaintiff contends is an unconscionable class action waiver. Accordingly, the Court **GRANTS** FPL's Motion to Compel Arbitration. (Doc. 16.)

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration. (Doc. 16.) The Court **ORDERS** the parties to individually submit the underlying dispute to arbitration in accordance with the Arbitration Agreement. In addition, the Court **DIRECTS** the Clerk of Court to **STAY** and **ADMINISTRATIVELY CLOSE** this case. The parties are **DIRECTED** to file a joint report on the status of the arbitration proceeding **NINETY (90) DAYS** from the date of

this Order, every **NINETY (90) DAYS** thereafter, and within **TEN (10) DAYS** of completion of arbitration proceedings.

**SO ORDERED**, this 27th day of May, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA